STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CR-13-58
*MMM -KEN - 9/15/2013*

STATE OF MAINE

V.

ORDER ON DEFENDANT'S MOTION TO
DISMISS

TORY HEMPHILL JOSEPH

### Background

Before the Court is Defendant's Motion to Dismiss the Indictment. The Defendant

is charged with Class B Theft. The case was first filed as CR-12-375 but the Complaint in

that matter (dated May 11, 2012) was dismissed by the Court on January 15, 2013

pursuant to Rule 48(b)(2). He was finally indicted by the Kennebec County Grand Jury

on January 28, 2013.

This motion is brought under Rule 48(b)(1) which permits the Court to dismiss a

case with or without prejudice if "there is unnecessary delay in bringing a Defendant to

trial..."

In his motion to dismiss dated March 5, 2013 the Defendant argues that he has

been prejudiced by the delays which have occurred in this matter. This motion was heard

by the Court on May 9, 2013 (along with other motions) and the Court ordered the parties

to provide the Court with more information regarding what happened to an ice shack

which was seized as evidence by the Winslow Police Department from the Defendant

when he was arrested in May of 2012 for this charge. The parties submitted written

1

responses, the last of which was received on May 20, 2013. The Court then set the matter for hearing and took testimony from the Defendant on July 31, 2013. The State is represented by Deputy District Attorney Fern Larochelle, and the Defendant is represented by Attorney Robert Sandy, Jr.

## FINDINGS

The Defendant's position as the Court understands it is that the ice shack that was seized from him is material evidence essential for the defense in this matter. The Court would note that the ice shack is not the property that is alleged to have been stolen; rather, the State is alleging that the Defendant stole 6 trailers from Alcom, Inc., the Defendant's former employer. The Defendant argues, however, that when the complainant was interviewed by law enforcement about the theft of the trailers, he also accused the Defendant of stealing materials used to construct the ice shack, and gave vastly inflated figures for the value of the ice shack. The Defendant claims that had the ice shack been available, he would have been able to call into question the credibility of the complainant on the core allegations which are that the Defendant never had permission to take materials and other property (including the trailers), and that the value of what he stole exceeded more than $10,000.

The Court would find – and the State would seem to agree – that the complainant's credibility is crucial on both these issues as the Defendant's position is first of all that he, along with other Alcom employees, were at various times allowed to take scrap material and discarded items from the work site for their own use. In his statement to law enforcement, the complainant claimed that the Defendant did in fact

2

have "permission as did other employees from time to time to build items or use items with PERMISSION only and all materials are to be PAID for. (Complainant) stated that Tory Joseph took materials to build his ice shack and never paid for the materials he took. Your affiant states that (complainant) gave an estimate of the materials used to make the ice shack that Tory built and not paid for as approximately $5,000 worth of materials." (Affidavit and Request for Arrest Warrant of Detective Gina Henderson dated May 11, 2012 filed in CR-12-375).

The facts about what occurred with the ice shack are not really in dispute. On January 14, 2013 Attorney Sandy contacted Detective Henderson advising her that he wished to inspect the ice shack. He left a voice mail but it was never returned. He soon learned that the ice shack had been returned to Alcom by the Winslow Police Department, and that the complainant sold it. According to the State, the ice shack was seized by Winslow PD sometime in late April of 2012. Detective Henderson who was working with an Assistant District Attorney (employed by a prior District Attorney's Office administration) returned the ice shack to Alcom, due to lack of storage space as the police department was undergoing construction. Det. Henderson told Deputy District Attorney Larochelle that she is sure that she told the complainant that the prior DA's Office advised it was fine to return the ice shack so long as "he kept it as it was, on hand, until this case is over, because it was still evidence." ((May 15, 2013 letter to Court from DDA Larochelle). She also acknowledged that Attorney Sandy called her, that she did not call him back, and that the shack was already gone by the time he attempted to contact her.

3

Department records indicate that the ice shack was returned to Alcom on August 28, 2012. The shack was sold by Alcom on December 27, 2012, but the complainant denies being told to preserve it as evidence. The complainant sold the ice shack to an individual who was interviewed by Attorney Sandy just prior to the last hearing. The purchaser paid the complainant $1200 for the shack and he told the defense that he had altered the shack by adding insulation and making other changes.

The Defense had some difficulty finding an appraiser willing to give an opinion of value as two of them had a business relationship with Alcom they did not want to jeopardize. However, even if they could appraise its value as of now, the Court finds that it would be difficult if not impossible for any expert to offer an opinion about the value of the shack as of the date the complainant said the materials were worth $5,000.

The Court concludes that the evidence that has been lost to the defense due to the actions of state actors and the complainant is material evidence, and access to it would be necessary for an effective defense against this charge. The Court is persuaded that this evidence is, as the defense has argued, a critical if not the only "objective metric" upon which the defense could challenge the complainant's credibility.

The Court would find further that there was no intentional conduct on the part of either District Attorney's Office(s), or the Winslow Police Department to destroy this evidence or render it unavailable to the defense. However, the impact on the defense, intentional or not, is still the same. The loss of this evidence would make it difficult if not impossible for the defense to raise a reasonable doubt about the complainant's credibility. If the jury were told about these events, they would be left to speculate about critical facts

4

which could skew their finding on credibility, which both parties agree to be the central issue in the case.

It is also clear that the defense diligently pursued the preservation of this evidence, and that the State was less than responsive to the issue in the early stages. When the property was returned to the complainant, and no longer under control of the State (and arguably the Court), the defense was entitled to be told. Once Det. Henderson declined to respond to the defense query, the defense was obligated to work through the DA's Office to obtain access to this evidence, and when that failed, had to resort to the Court. Finally, the delay in these proceedings as a result of the failure of the State to present this matter to a number of grand juries weighs against the State's position as well.

Because the defense has been prejudiced as described above, and could not receive a fair trial under these circumstances, the Court grants the motion. The Indictment is dismissed with prejudice.

_____  
8/15/13  
**DATE**

_____  
**SUPERIOR COURT JUSTICE**

5